Approved: _____
JESSE M. FURMAN
Assistant United States Attorney

07 MAG 0265

Before:   THE HONORABLE MICHAEL H. DOLINGER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA          :     **SEALED COMPLAINT**

          - v -                   :     Violation of
                                        21 U.S.C. § 846
PAUL OSUJI,                       :
 a/k/a "Mr. P,"                         COUNTY OF OFFENSE:
                                  :     BRONX
                 Defendant.
                                  :
- - - - - - - - - - - - - - - - - -x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          JEFFREY SENN, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

                         COUNT ONE

          1.   In or about December 2006, in the Southern District of New York and elsewhere, PAUL OSUJI, a/k/a "Mr. P," the defendant, while released under Chapter 207 of Title 18 of the United States Code, committed a felony offense, to wit, he and others known and unknown, unlawfully, intentionally, and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

          2.   It was a part and an object of the conspiracy that PAUL OSUJI, a/k/a "Mr. P," the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Sections 812, 841(a)(1), and 841(b)(1)(B) of Title 21, United States Code.

              (Title 21, United States Code, Section 846,
          and Title 18, United States Code, Section 3147.)

The bases for deponent's knowledge and the foregoing charge are, in part, as follows:

3. I am a Special Agent with the Drug Enforcement Administration (the "DEA"). My duties include investigating violations of federal narcotics laws. I have investigated the above-captioned case and have spoken with other law enforcement officers and witnesses and have reviewed pertinent documents. When I rely upon statements made by others, such statements are related in part and in substance unless otherwise indicated. Because this affidavit is submitted only for the limited purpose of establishing probable cause, I have not set forth each and every fact learned during the course of this investigation.

4. Since at least in or about June 2006, the DEA has been investigating an organization involved in the importation of multi-kilogram quantities of heroin from Turkey, Nigeria, and other countries and the distribution of that heroin in the United States. On or about June 2, 2006, the DEA arrested an individual at John F. Kennedy Airport who had swallowed approximately 742 grams of heroin ("Courier #1"). On or about August 9, 2006, the DEA arrested another individual at John F. Kennedy Airport who had concealed in her stomach and vagina approximately 1.3 kilograms of heroin ("Courier #2"). Both Courier #1 and Courier #2 identified a co-conspirator not named as a defendant herein ("CC-1") as the intended recipient of the heroin.

5. From in or about August through in or about October 2006, the DEA obtained court orders authorizing the interception of communications over three cellphones used by CC-1. Among the communications intercepted were many with an individual referred to as "Paul" or "Mr. P" or "Joseph," using telephone numbers (718) 407-9110 (the "9110 Number") and (347) 671-3962 (the "3962 Number"). For the following reasons, I believe that this person is PAUL OSUJI, a/k/a "Mr. P," the defendant:

   a. From telephone records, I have learned that that the 9110 Number is listed or leased to "Paul Osuji."

   b. On or about November 9, 2006, "Paul" had a telephone conversation with CC-1 in which he stated that earlier that week he had been arrested by the "FBI" at the airport based on an indictment "concerning that business of mine in North Carolina." From another law enforcement agent, I have learned that, on or about November 1, 2006, Federal Bureau of Investigation agents arrested PAUL OSUJI, the defendant, at John F. Kennedy Airport, based on charges of conspiracy, money

2

laundering, and health care fraud. He was subsequently released on bail under Title 18, United States Code, Chapter 207, and was so released in or about December 2006.

        c. On or about December 19, 2006, CC-1 spoke by telephone with another co-conspirator not named as a defendant herein ("CC-2"). During the conversation, CC-1 referred to "Paul," and then described him as "that one that used to work for me, the Owerri one, Osuji."

    6. Although CC-1's organization was primarily involved in the importation and distribution of heroin, some communications involving CC-1 related to cocaine. For example, on or about September 15, 2006, CC-1 had a telephone conversation with another co-conspirator not named as a defendant herein. During the call, CC-1 stated that one of his "friends" had died: "He was on his way to Nigeria and had a heart attack on the plane." Shortly thereafter, CC-1 added: "It seems like he ate something, you understand, before leaving." CC-1 further stated that the person who died had been traveling from Atlanta to London, and then onto Nigeria; and that his plane had been diverted to Canada where he died. From law enforcement officials, I have learned that, on or about August 31, 2006, a flight from Atlanta to London (via Detroit) was diverted to Halifax, Canada, when a male passenger got ill. The passenger subsequently died, and law enforcement officers discovered that he had swallowed approximately 66 balloons filled with approximately 600 grams of cocaine; approximately 12 of the balloons had burst, causing the courier to overdose. Based on my training and experience, my participation in this investigation, and review of other intercepted communications, I believe that CC-1 was describing this passenger and that he was transporting cocaine to London, England, where the price of cocaine is higher than in the United States.

    7. Among the other communications intercepted over CC-1's cellphones were the following, relating to CC-1's involvement, in or about December 2006, with PAUL OSUJI, a/k/a "Mr. P," the defendant, in a conspiracy to distribute more than 500 grams of cocaine:[1]

---

[1] The original language of many of the intercepted conversations was Igbo. These conversations have been translated by translators assigned to assist the DEA in connection with this case. Translations are preliminary and are subject to modification. Quoted portions are not necessarily exact quotes, but are the sum and substance of the calls according to the monitoring agent or translator.

    a. On or about December 18, 2006, CC-1 spoke to another co-conspirator not named as a defendant herein ("CC-3"), located in Detroit, Michigan. During the conversation, CC-1 stated that "somebody" had come to him, one of his "friends," and that "they have five." He further stated: "They want their money, they want it up front. Can you handle that?" In another conversation later the same day, CC-3 informed CC-1 that they were going to "sit it out." CC-1 then stated to CC-3: "It's a different ballgame, is a different thing. . . . Is a different thing, the other type." When CC-3 expressed confusion about what CC-1 was talking about, CC-1 stated: "I thought it was, eh, the other one I give to you, but it was a different one. You know after looking at it, I found out is, eh, the girl." CC-3 then stated: "Oh, we don't fuck with that anyway." Based on my training and experience, my participation in this investigation, and review of other intercepted communications, I believe that, during these conversations, CC-1 was telling CC-3 that he had approximately five kilograms of cocaine available for purchase. The reference to "five" is to bricks; the references to "different ballgame," "different thing," "the other type," and "the girl," signify cocaine as opposed to heroin (which CC-1 previously supplied to CC-3); and the reference to wanting "it up front" is to the suppliers' desire to get paid up front.

    b. On or about December 19, 2006, CC-1 called another co-conspirator not named as a defendant herein ("CC-4"), also located in Detroit, Michigan. During the conversation, CC-4 asked: "[T]he . . . girl, ahhh, can . . . you do it?" CC-1 responded: "Yeah, yeah, that way easier just more hotter. . . . Somebody came with me but he came with about, ahhh, about four something you know. So I said let me call my man. I left you a message last night to call me." CC-4 then stated: "Now I could, but it's just too much heat around . . . . What they ahh looking for?" CC-1 responded: "They have not said what they are looking for, but what do you think it is going to go for so I could talk to them?" CC-4 replied: "It goes for around 18 around here." CC-1 then stated: "Eighteen. But this is for five four hundred or five. How much would that be?" CC-4 answered: "Ah that's less than half." Shortly thereafter, he continued: "Yeah, that after you cut that probably, ah, around somewhere around eight, nine, somewhere around there I guess." CC-1 ultimately agreed to "talk to them," and stated: "[I]f they agree on something, I will call you I will tell you that I will be there okay?" Based on my training and experience, my participation in this investigation, and review of other intercepted communications, I believe that, during this conversation, CC-1 was offering the cocaine to CC-4 and inquiring of CC-4 what the going price for cocaine is in Detroit. The reference to the "girl" is to cocaine; to "five

4

four hundred or five" is to the quantity available, perhaps five half kilogram bricks; and the references to "18" are to $18,000, or the going price for a kilogram of cocaine in Detroit.

        c.    Approximately one minute after the call summarized in the previous subparagraph, CC-1 called OSUJI, and stated: "Yeah, I and this guy spoke eh. And isn't it . . . this person said it was 4 right?" OSUJI responded: "Four and . . . yeah 4, and 5 pieces." CC-1 then stated: "Man, to tell you the truth, he said that . . . that one of the big one . . . what is given there, you understand? . . . Seventeen, and if that one . . . you know that me . . . if it is half of it, you know it's half of it, I don't know how much this person wants to give this, you understand?" OSUJI then stated: "One of the big one, one of the big one is 17?" CC-1 answered: "Seventeen, but in that but that [unclear] is usually more in our city . . . in this city, you understand?" Based on my training and experience, my participation in this investigation, and review of other intercepted communications, I believe that, during this conversation, CC-1 was informing OSUJI about his prior conversation with CC-4, and discussing the price and availability of the cocaine.

        d.    Later that same day, CC-1 spoke by telephone with CC-2. During the conversation, CC-1 stated that, the day before, he had seen CC-2's "brother . . . who said that he played ball" in New York. CC-1 continued: "He and Paul came to my place together, you understand?" When CC-2 asked who CC-1 was talking about, CC-1 responded: "Paul. That boy that works . . . that one that used to work for me, the Owerri one, Osuji." CC-1 then stated: "He has . . . he has the thing of . . . of Margaret Thatcher them." When CC-2 asked if it was paper, CC-1 replied: "No, the one of . . . the one that one goes to Margaret Thatcher's for . . . . He has 4 pieces and came and asked me to come and see, I thought it was the one of this thing, then I found out it was . . . it was the one of Margaret Thatcher them. I told him I don't know anything about it." When CC-2 asked where "he" brought it from, CC-1 responded: "I don't know, that's why . . . I called you to ask you if it came . . . if it came from another country, you understand. He said it's Prelue . . . Prelud or Prelue." CC-2 then stated: "Peru, Peru," and CC-1 concurred: "Yeah, Peru." Based on my training and experience, my participation in this investigation, and review of other intercepted communications, I believe that, during this conversation, CC-1 was informing CC-2 that, the day before, OSUJI and another individual (CC-2's "brother" who said he played ball) had come to his place with four bricks of cocaine. The reference to "my place" is to CC-1's residence or business, which I know

5

from surveillance to be in the Bronx; the references to the "one of Margaret Thatcher" and the like are to cocaine; and the references to "four pieces" are to four bricks.

        e.    The following day, CC-1 had multiple conversations with OSUJI. In the first, CC-1 stated: "Um, these people called me now and said 7, you understand? So I wanted to know if it's still there, you know. But I asked them to bring money first." In a follow-up conversation, CC-1 stated: "They called me this morning and I told them to bring first. . . . I went and got the little thing left and gave them to look at, they . . . then I told them to call me and tell me if it's [unclear] or not." CC-1 continued: "I wanna make sure that, that it's still there, you understand?" OSUJI then answered: "Because there's someone else [stutter] I'm talking with but I . . . what I'm doing is, whoever is [unclear] ready I'll . . . I'll do what I'm doing and move on cause I told you that someone is coming in and I don't want to be running around for this." Based on my training and experience, my participation in this investigation, and review of other intercepted communications, I believe that, during this conversation, CC-1 was informing OSUJI about a potential buyer for the cocaine. The reference to "7" is to $17,000, the potential purchase price; the reference to "the little thing left" is to a sample of the cocaine, which CC-1 had provided the potential purchasers.

    WHEREFORE, the deponent prays that a warrant be issued for the arrest of PAUL OSUJI, a/k/a "Mr. P," the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

*[signature]*
JEFFREY SENN
Special Agent
DRUG ENFORCEMENT ADMINISTRATION

Sworn to before me this
20th day of February, 2007

*[signature]*
THE HONORABLE MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK