UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,            :
                                     :  **FILED ELECTRONICALLY**
                    v.               :
                                     :  07 Cr. 0124 (WHP)
EMMANUEL ORUCHE, et al.,             :
                                     :
                    Defendants.      :
                                     :
-------------------------------------------------------- x


MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSEPH OLUIGBO'S
MOTIONS *IN LIMINE*


Andrew J. Ceresney
Eric D. Meyer
Neuman Leverett III
Gordon Eng
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Counsel for Defendant*
JOSEPH OLUIGBO

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................1

PROCEDURAL HISTORY..................................................................................................2

ARGUMENT .......................................................................................................................4

I.    THE COURT SHOULD EXCLUDE ALL EVIDENCE OF MR. OLUIGBO'S PRIOR CONVICTION UNDER FED. R. EVID. 404(b) AND 403 ..................................4

    A.    Relevant Facts..................................................................................................4

    B.    It Is Improper For The Government To Introduce Evidence of Mr. Oluigbo's Prior Conviction Under Fed. R. Evid. 404(b).........................................5

II.    EVIDENCE OF ACTS FALLING OUTSIDE THE CONSPIRACY CHARGED IN THE INDICTMENT SHOULD BE EXCLUDED ........................................................9

III.    THE COURT MUST EXCLUDE THE EXPERT OPINION TESTIMONY OF GOVERNMENT AGENTS...............................................................................................11

IV.    IMMEDIATE DISCLOSURE OF 3500 AND GIGLIO MATERIALS, AS WELL AS TRANSCRIPTS OF THE TAPES THE GOVERNMENT INTENDS TO OFFER AT TRIAL, IS NECESSARY ........................................................................15

V.    MOTIONS OF CO-DEFENDANTS .................................................................................11

CONCLUSION....................................................................................................................16

## TABLE OF AUTHORITIES

### FEDERAL CASES

*United States v. Castillo*, 924 F.2d 1227 (2d Cir. 1991) ................................................ 12, 14

*United States v. Colon*, 880 F.2d 650 (2d Cir. 1989) ............................................................. 8

*United States v. L. Cruz*, 981 F.2d 659 (2d Cir. 1992) ..................................................12, 13, 14

*United States v. T. Cruz*, 363 F.3d 187 (2d Cir. 2004) ................................................... 12, 13

*United States v. Cushing*, No. S3 00-Cr-1098; 2002 WL 1339101 (S.D.N.Y. June 18, 2002) .................................................................................................................. 7

*United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ........................................................ 7

*United States v. Garcia*, 291 F.3d 127 (2d Cir. 2002) .................................................. 5, 6, 7

*United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004) ............................................... 14

*United States v. Lauersen*, 98 Cr 1134, 2000 WL 1677931 (S.D.N.Y. Nov. 8, 2000) ….. 7, 8

*United States v. Levy*, 731 F.2d 997 (2d Cir. 1984) ................................................... 9, 10, 11

*United States v. Mahaffy*, 477 F. Supp. 2d 560 (E.D.N.Y. 2007) .............................. 9, 10, 11

*United States v. Nektalov*, 325 F. Supp. 2d 367 (S.D.N.Y. 2004) ........................................ 9

*United States v. Pipola*, 83 F.3d 556 (2d Cir. 1996) ............................................................ 8

*United States v. Williams*, 739 F.2d 297 (7th Cir. 1984) ..................................................... 8

*United States v. Tubol*, 191 F.3d 88 (2d Cir. 1999) ..................................................... 6, 7, 8

### FEDERAL RULES

Fed. R. Evid. 403 ..................................................................................................................... 7

Fed. R. Evid. 404(b) ................................................................................................................ 5

Fed. R. Evid. 702 ................................................................................................................... 12

**PRELIMINARY STATEMENT**

Defendant Joseph Oluigbo submits this memorandum of law in support of his motions *in limine* to exclude at trial: (i) all references to his 1991 drug conviction; (ii) all references to any uncharged crimes or other alleged bad acts, including alleged conduct by Mr. Oluigbo in 2005 that the government has recently disclosed but that is not charged in the indictment; and (iii) all expert and lay opinion testimony offered by government witnesses purportedly to explain the meaning of conversations captured on wiretaps by the government and the typical structure and operation of heroin trafficking organizations. In addition, Mr. Oluigbo also seeks immediate disclosure of all 3500 and *Giglio* material from the government, as well as transcripts for all tape recordings that the government intends to introduce at trial.

The government has provided Mr. Oluigbo with notice that pursuant to Fed. R. Evid. 404(b), it may seek to introduce evidence relating to Mr. Oluigbo's 17-year-old narcotics conviction "as proof of [his] intent to distribute narcotics and knowledge of the crimes charged in the indictment." Declaration of Gordon Eng dated May 12, 2008 (Eng Dec.) Ex. A. Because Mr. Oluigbo's 17-year-old conviction bears no connection or similarity to the present case – other than the fact that it also involved narcotics – and because a reference to that conviction at trial would have no probative value and an overwhelming prejudicial impact, the Court should preclude reference to this conviction at trial. Similarly, the government's claim that certain alleged conduct by Mr. Oluigbo in 2005 is "inextricably intertwined" with the charged conduct, and therefore admissible, should be rejected, and any evidence outside the conspiracy actually charged in the indictment should be precluded.

The Court also should preclude the government from introducing purported expert or lay opinion testimony for the purpose of interpreting the meaning and import of "plain-English" words (including words in foreign languages that have been literally translated into English) and

the typical structure of a narcotics trafficking organization.  The recorded audio conversations that the government has produced and cited in the indictment and complaint do not contain coded language or references that a jury would not be able to understand and interpret on its own, and therefore there is no need for a government agent to offer his or her opinions on what individuals involved in the recorded conversations may have been discussing.  And in any event, the introduction of such opinion testimony by a federal agent carries a substantial risk that a jury will give it undue weight.  Any such testimony is unnecessary and improper, and should be excluded.

Finally, in order to properly defend this case, and to avoid the need for any delay in the midst of trial, immediate disclosure of any prior witness statements and transcripts of the recordings the government intends to offer, many of which are in a foreign language, is necessary.

## PROCEDURAL HISTORY

On February 28, 2007, Mr. Oluigbo was arrested on a complaint and ultimately added to two counts of a five-count Superseding Indictment against eight defendants.  Count three of the indictment charges Mr. Oluigbo and others with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin in 2006, in violation of 21 U.S.C. § 846, and count four charges him and others with conspiracy to import into the United States one kilogram and more of heroin in 2006, in violation of 21 U.S.C. § 963.  As the Court recognized in its Memorandum and Order dated March 5, 2008 directing the government to provide Mr. Oluigbo with a bill of particulars, the indictment and the complaint essentially allege only one specific act by Mr. Oluigbo, *i.e.,* that on September 30, 2006, he spoke with Mr. Oruche (his employer at a legitimate business, a medical supplies store) on the phone four times regarding an alleged drug courier's arrival in New York.

2

Trial is scheduled to commence on June 9, 2008. In its March 5, 2008 Memorandum and Order, the Court directed the Government to provide by forty-five days prior to trial, i.e., by April 25, 2008, notice of the general nature "of other crimes, wrongs or acts" that it intends to introduce at trial pursuant to Fed. R. Evid. 404(b). In a letter dated April 30, 2008, five days after the deadline, the Government provided notice pursuant to Rule 404(b) that it may "seek to elicit testimony from witnesses and introduce evidence regarding [Mr. Oluigbo's] prior narcotics-selling activity as proof of [Mr. Oluigbo's] intent to distribute narcotics and knowledge of the crimes charged in the indictment." The Government described the evidence as consisting of "the events surrounding Joseph Oluigbo's importation of approximately 754 grams of heroin into the United States at JFK airport and related conviction on or about July 16, 1991, in Queens County Supreme Court."

Further, in its April 30 notice, the government disclosed that it may seek to elicit testimony and introduce evidence of Mr. Oluigbo's alleged participation with defendant Oruche and others in a conspiracy to import and distribute heroin in the United States in 2005. According to the government's letter, such evidence would include testimony that in 2005, Mr. Oluigbo allegedly aided Mr. Oruche in importing and distributing heroin by transporting drug couriers within the United States and otherwise arranging for their travel within and outside of the United States. The government stated that it does not consider this evidence to fall within the scope of Rule 404(b) "because it is intrinsic to and/or inextricably intertwined with the charged offenses."

**ARGUMENT**

**I.     THE COURT SHOULD EXCLUDE ALL EVIDENCE OF MR. OLUIGBO'S PRIOR CONVICTION UNDER FED. R. EVID. 404(b) AND 403**

The Court should preclude the government from referencing Mr. Oluigbo's 1991 conviction because it amounts to classic propensity evidence. That dated conviction – which bears no similarity to the present case other than the drug at issue – has no bearing on Mr. Oluigbo's alleged intent to distribute narcotics as charged in the present indictment or his alleged knowledge of the charged crimes, and the danger of unfair prejudice overwhelmingly outweighs any probative value of that conviction.

**A.     Relevant Facts**

As relevant to this motion, in the summer of 1990, shortly after graduating from the University of Georgia, Mr. Oluigbo traveled to his native Nigeria to attend a wedding. Upon his return to New York, authorities discovered a quantity of heroin in his luggage at JFK airport. Mr. Oluigbo pleaded guilty to possession of a controlled substance in the second degree in violation of New York State Penal Law 220.18, and was sentenced to a term of four years to life in New York State prison. *See* Eng Dec., Ex. B. Mr. Oluigbo was released in 1994 after serving about two and a half years of this sentence. No other individuals were charged in that case, and Mr. Oluigbo was not charged with participation in a conspiracy.[1]

---

[1]  Mr. Oluigbo's only other non-immigration-related arrest was in June 2003, when he was arrested after presenting a counterfeit driver's license at a traffic stop. He pled guilty to forgery in the third degree, in violation of New York State Penal Law 170.05, a misdemeanor. The government has not given notice of its intent to offer evidence of this conviction, which would clearly not be relevant or admissible. Nor has the government suggested any intent to offer evidence of Mr. Oluigbo's immigration status or detention, which is similarly irrelevant.

4

### B. It Is Improper For The Government To Introduce Evidence of Mr. Oluigbo's Prior Conviction Under Fed. R. Evid. 404(b)

Federal Rule of Evidence 404(b) prevents the admission at trial of other bad acts to show the character of a person in order to show action in conformity with those prior acts. In particular, Fed. R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The Second Circuit has identified four factors it will consider when deciding whether a trial court properly admitted evidence of prior bad acts: (1) whether the prior act evidence was offered for a proper purpose; (2) whether the evidence was relevant to a disputed issue; (3) whether the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) whether the court administered an appropriate limiting instruction. *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002).

The Second Circuit has held that admission of a prior conviction under circumstances closely analogous to this case amounts to reversible error. In *Garcia*, for example, the defendant was convicted of cocaine charges after the district court admitted evidence of the defendant's 12-year-old prior cocaine conviction. The Second Circuit held that the trial court had erred in admitting that evidence because the prior conviction was irrelevant to questions of the defendant's knowledge and intent, particularly given the length of time since the prior conviction and the substantially different circumstances underlying the prior conviction and the current charges. *Id*. at 138. The Court emphasized that the mere fact that both convictions involved

5

cocaine did not render the prior conviction relevant to establishing intent or knowledge of the current charges. *Id.* Admonishing the government, the Court added:

> The government may not invoke Rule 404(b) and proceed to offer, carte blanche, any prior act of the defendant in the same category of crime. The government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act. . . . <u>If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent.</u>

*Id.* at 137 (internal citations omitted) (emphasis added).

Similarly, in *United States v. Tubol*, 191 F.3d 88, 96 (2d Cir. 1999), the defendant was charged with bank robbery when he allegedly approached a bank teller dressed as a Hasidic Jew and passed a note claiming to have a bomb, which actually turned out to be a fake bomb. The Second Circuit found reversible error in the trial court's admission of evidence that the defendant had previously been paid to plant a bomb in a residence in Israel, noting that "[t]here was no proof that the hoax bomb and the Israeli bomb shared any characteristics beyond the word 'bomb' or that Tubol used them in similar ways." *Id.* Because of the lack of similarity beyond the superficial resemblance, the court found that the "testimony goes directly and principally to character, the very evil that Rule 404 attempts to prevent." *Id.*

*Garcia* and *Tubol* are controlling here. In his prior conviction, Mr. Oluigbo was arrested at JFK airport with more than four ounces of heroin in his luggage. Here, he is charged with being a bit player in a conspiracy that the government alleges involved the importation of heroin from international locations and distribution of that heroin to several U.S. cities. The alleged schemes are completely different. There is no common participant and the conduct of which Mr. Oluigbo is accused is dissimilar – Mr. Oluigbo was alleged in 1991 to have imported drugs himself, while here he is accused of assisting with administrative details and transportation of couriers. The remoteness in time of the prior conviction further undermines any probative value.

6

*See Garcia*, 291 F.3d at 139 ("The length of time between the events and the substantial difference in quantities [of cocaine] involved detract from any potential probative value of the prior conviction."); *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980) (noting that Rule 609 and Rule 403 "oblige the trial court to assess the probative value of every prior conviction offered in evidence and the remoteness of a conviction, whatever its age, is always pertinent to this assessment.").

The only similarity between Mr. Oluigbo's 1991 conviction and the current charge is the drug he is accused of conspiring to distribute; and both *Garcia* and *Tubol* instruct that a superficial similarity between a prior conviction and a present allegation is insufficient to support admission of that evidence. In the absence of any real similarity between the prior conviction and current charges, the prior conviction amounts simply to improper evidence of propensity. This is precisely the type of invited inference that Rule 404(b) is designed to preclude. *See United States v. Cushing*, No. S3 00-Cr-1098, 2002 WL 1339101, at *3 (S.D.N.Y. June 18, 2002) (Pauley, J.) (precluding evidence of defendant's prior misrepresentation to NASD to show knowledge and intent in charged offense of committing perjury and obstructing justice with respect to an SEC investigation, because evidence of prior bad act would only show defendant's willingness to lie to investigating authorities).

Finally, even if the government had met its burden, which it has not, for admission of Mr. Oluigbo's prior conviction for a proper purpose and relevancy under Rule 404(b), the evidence still should be excluded under Fed. R. Evid. 403 because any probative value of his prior conviction is substantially outweighed by the serious danger of unfair prejudice. *See United States v. Lauersen*, No. S2 98-Cr-1134, 2000 WL 1677931, at *3 (S.D.N.Y. Nov. 8, 2000) (Pauley, J.) (citing *Huddleston v. United States*, 485 U.S. 681, 691 (1988)); *United States v.*

7

*Pipola*, 83 F.3d 556, 566 (2d Cir. 1996); and *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989). For the reasons stated above, particularly the remoteness in time of the conviction and the absence of any commonality in participants or facts, there is little, if any, probative value of Mr. Oluigbo's prior conviction. The unfair prejudicial value of that evidence, however, is particularly high. Evidence presents a risk of "unfair prejudice" if it has "an undue tendency to suggest decision on an improper basis." *Lauersen*, 2000 WL 1677931, at *2. There is a tremendous risk that a jury will give undue weight to the mere fact that Mr. Oluigbo has a prior conviction for heroin.

In fact, the paucity of overall evidence against Mr. Oluigbo in this case further favors preclusion of this evidence. The complaint and indictment in this case were so lacking in factual content and detail as to warrant the Court to order the government to provide a bill of particulars to provide sufficient notice to Mr. Oluigbo of the charges against him. Courts have concluded that such evidentiary weakness heightens the risk of unfair prejudice from the admission of prior crimes. *See e.g., Tubol*, 191 F.3d at 97 ("Given the relative weakness of the evidence linking [defendant] to the crime, we believe that the substantial evidence of other crimes could have infected the jury's verdict."); *see also United States v. Williams*, 739 F.2d 297 (7th Cir. 1984) (finding that the risk of unfair prejudice in government's improper introduction of character evidence to have substantially outweighed the probative value of the evidence under Rule 403 especially because prosecution evidence of guilt apart from prior bad act was not very strong). Under these circumstances, no limiting instruction will provide adequate remedy to cure the high risk of unfair prejudice. Accordingly, this Court should exclude Mr. Oluigbo's prior conviction under Rule 404(b) and Rule 403 .

## II.  EVIDENCE OF ACTS FALLING OUTSIDE THE CONSPIRACY CHARGED IN THE INDICTMENT SHOULD BE EXCLUDED

The government has also indicated its intent to offer evidence and testimony of alleged conduct by Mr. Oluigbo in 2005 (before the start of the charged conspiracy in 2006) which, the government claims, is inextricably intertwined with the conspiracy.  Admission of such evidence is improper, particularly given the lengthy passage of time between the 2005 conduct and the conduct charged in the indictment, and the government's failure to demonstrate that the 2005 conduct is inextricably intertwined or otherwise not severable from the charged conduct.

Evidence of criminal activity not specifically charged in the indictment may be directly admissible without reference to Rule 404(b) "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004).  However, courts in the Second Circuit have concluded such evidence must be scrutinized closely to ensure that it is in fact intrinsic to or inextricably intertwined with the charged conduct.  For example, the *Nektalov* court concluded that, "where it is not manifestly clear that the evidence in question is intrinsic proof of the charged crime, the proper course is to proceed under Rule 404(b)." *Id.* at 372. Indeed, the Second Circuit has reversed a trial court's admission of purportedly inextricably intertwined evidence of an uncharged crime that occurred as little as six hours prior to the charged offense, where, upon closer scrutiny, the evidence was found to be "other act" evidence properly governed by Rules 404(b) and 403.  *United States v. Levy*, 731 F.2d 997, 1004 (2d Cir. 1984).  In yet another recent example, the district court in *United States v. Mahaffy*, 477 F. Supp. 2d 560, 567 (E.D.N.Y. 2007), rejected the government's attempt to admit, without reference to Rule 404(b), evidence that an alleged and uncharged Wachovia scheme to obtain improper

9

access to its squawk boxes was inextricably intertwined with the charged offense involving a Wachovia front running scheme despite the acknowledged similarity of the acts.

We do not know the exact nature and extent of the evidence the government plans to offer relating to the 2005 conduct because the Government has yet to provide Mr. Oluigbo with 3500 materials or any other information regarding this evidence, and the government's bill of particulars, which defendants received on May 9, 2008, offered no specificity regarding this uncharged conduct.  But certainly, the government has failed to meet its burden of demonstrating that this evidence is inextricably intertwined or otherwise intrinsic to the charged conspiracy.  In its bill of particulars, the first instance of charged conduct which the government has identified took place in July 2006.  Given that the first act charged in the indictment against Mr. Oluigbo occurred seven months into 2006, it is completely unclear how any 2005 conduct can be said to be inextricably intertwined with the charged conduct.  Conduct occurring so many months prior to the charged offense is more likely to amount to a separate and discrete act, and certainly is not inextricably intertwined with the charged conduct.

Courts have rejected government attempts to introduce evidence as intrinsic to the charged offense and outside Rule 404(b) where the uncharged conduct was found to constitute separate, discrete conduct "that may be conceptually segregated from the charged offenses without impairing the jury's ability to understand the facts underlying the [offenses] alleged in the indictment." *Mahaffy*, 477 F. Supp. 2d at 566.  And even if there is some attenuated connection, such evidence amounts to improper, uncharged conduct.  For example, in finding reversible error in *Levy* arising from the admission of a sample transaction soon before the charged transaction, the Second Circuit explained that "[g]iven the paucity of the evidence supporting the conviction, the danger is too great that [defendant] might have been convicted

because of his participation in the [purported inextricably intertwined acts] rather than because he was guilty beyond a reasonable doubt of the crime alleged." *Levy*, 731 F.2d at 1004 (internal citations and quotations omitted). For the same reasons, evidence of uncharged conduct should be precluded here.

In the alternative, if the Court finds that it cannot adequately assess the relevance and the potential prejudicial effect of the government's 2005 evidence and therefore is unable to grant Mr. Oluigbo's motion here, the Court should "defer resolution of these issues until trial, where the Court will be better able to assess the proffered evidence in the context of the other evidence presented and positions taken by the parties." *Mahaffy*, 477 F. Supp. 2d at 568 (citing *United States v. Gotti*, No. 02-Cr-743, 2004 WL 2423799, at *6 (S.D.N.Y. Oct. 29, 2004)).

### III.  THE COURT MUST EXCLUDE THE EXPERT OPINION TESTIMONY OF GOVERNMENT AGENTS

It would be inappropriate, and would unfairly influence the jury, to allow the government to introduce testimony from a federal agent, carrying the imprimatur of an expert in the narcotics trade, for the purpose of explaining the tape recorded conversations offered at trial and to explain the structure of the narcotics trafficking operations allegedly involved in this conspiracy. Based on the information provided in discovery, it appears that the primary evidence the government intends to offer against Mr. Oluigbo is wiretap conversations. Some of these conversations are in English and some are in the Nigerian dialect Igbo, but all are in plain language devoid of any narcotics code. Ordinary jurors can understand and interpret these conversations (including the Igbo conversations once they are translated into English). In fact, in the Complaint and the Indictment, the government has misinterpreted these recorded conversations and incorrectly attributed criminal meaning to discussions related to routine business transactions. Allowing the government to unfairly bolster this misinterpretation through a purported expert opinion or

11

through lay opinion testimony will unduly harm and prejudice Mr. Oluigbo. And testimony regarding the structure and operations of the narcotics conspiracy charged in the indictment is unnecessary for the jurors to understand and evaluate the charges. Such evidence therefore should be precluded.

Federal Rule of Evidence 702 governs a district court's discretion to admit expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Second Circuit has placed strict limits on the circumstances where expert testimony describing the operations of drug dealers is appropriate. *United States v. Castillo*, 924 F.2d 1227, 1233 (2d Cir. 1991) (reversing admission of government agent's expert testimony because "the jury was capable of understanding the evidence and determining the facts in issue" without the agent's testimony). Such testimony is admissibly only when those operations "have esoteric aspects reasonably perceived as beyond the ken of the jury." *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992)("*LaBoy Cruz*"); *see also United States v. Cruz*, 363 F.3d 187, 196 (2d Cir. 2004)("*Tommy Cruz*") (reversing defendant's conviction, in part, because the court erred in admitting expert testimony of government agent to "interpret[] ambiguous words or phrases and there [was] no evidence that [interpreted] terms were drug codes.").

Here, neither of these sorts of testimony is necessary or appropriate. There is absolutely no evidence that the tapes contain drug-related code words, or phrases which jurors cannot

12

interpret through their own knowledge and common sense. *See LaBoy Cruz*, 981 F.2d at 664. Even if some of the intercepted conversations contain ambiguous exchanges, expert testimony to clarify any ambiguities in the intercepted conversations—absent evidence that they have a fixed and secret meaning in drug parlance—is inadmissible.

For example, in *T. Cruz*, the government elicited expert testimony from a DEA agent to explain what the defendant meant when he said he had been present at a drug deal "to watch [his codefendant]'s back while he did business." 363 F.3d at 191. On appeal, the defendant challenged the admissibility of the expert testimony regarding the meaning of the phrase "to watch" someone's "back" on the basis that the phrase was not drug-related code requiring an expert's explication. The Second Circuit agreed, reasoning "[a]n expert witness called on to testify about the meaning of narcotics codes strays from the scope of his expertise when he interprets ambiguous words or phrases and there is no evidence that these terms were drug codes." *Id.* at 196 (internal citations omitted). Indeed, there is a very real danger that jurors would give such testimony undue weight, and would substitute for their own analysis and treat as authoritative the agent's opinion on the meaning of the calls in which that agent was not a participant. No expert testimony regarding the interpretation of words and phrases on the tapes is admissible.

Similarly, expert testimony on the structure and operations of the alleged narcotics conspiracy also is inadmissible. The alleged narcotics trafficking activities identified in the indictment are straightforward – importation of drugs from outside the United States to the United States through couriers, and distribution of those drugs in the United States. No expertise is necessary to understand such activities and no unique and unusual characteristics beyond the ken of an ordinary juror is necessary to fully grasp the details. Any expert testimony on the

13

structure of the organization or its activities will only cause undue prejudice, not clarify ambiguities.

For example, in *United States v. LaBoy Cruz*, the Second Circuit ruled that the district court erroneously permitted the government to elicit expert testimony from an agent concerning the "typical drug trafficking operations between" Manhattan and Albany. 981 F.2d 659, 660 (2d Cir. 1992). The government's expert described the role played by intermediaries in a typical Manhattan-Albany drug scheme. *Id.* at 662. The government contended on appeal that the expert's testimony was necessary to assist the jury because the fact that drug suppliers often used third-party intermediaries when selling narcotics "was beyond the knowledge or understanding of an average juror from [Albany]." *Id.* The court rejected that argument out of hand, observing "[t]hat drug traffickers may seek to conceal their identities by using intermediaries would seem evident to the average juror from movies, television crime dramas, and news stories." *Id.; see also Castillo*, 924 F.2d at 1232 (holding that expert testimony on drug-related matters should be excluded "where all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience or observation in respect of the subject under investigation.")(internal citations and quotations omitted).

It is also inappropriate under Fed. R. Evidence 701 for the government to introduce lay opinion testimony from a federal agent – carrying "the aura and expertise of authority" – to provide summary testimony or similar evidence describing what to infer from the content of recorded conversations. *United States v. Grinage*, 390 F.3d 746, 750 (2d Cir. 2004).

14

Accordingly, expert and lay opinion testimony by a government agent in this case is improper and should be precluded.

### IV.   IMMEDIATE DISCLOSURE OF 3500 AND *GIGLIO* MATERIALS, AS WELL AS TRANSCRIPTS OF THE TAPES THE GOVERNMENT INTENDS TO OFFER AT TRIAL, IS NECESSARY

The government has not yet produced 3500 or *Giglio* materials, and although it has identified 65 tapes which it may play at trial, it has failed to produce transcripts of all of these tapes. Without these materials, defendants are unable to prepare for trial. Moreover, late disclosure of these materials could delay the trial. For example, information in the 3500 and *Giglio* material may require additional investigation which will require some time. And transcripts of the tapes, particularly those in Igbo, will require that the defendants verify the accuracy of the translations with their own translator. This also could take a substantial period of time. Disclosure of these materials at or soon before trial would prejudice defendants and potentially necessitate an adjournment or some delay at trial. Accordingly, Mr. Oluigbo seeks immediate disclosure of 3500 and *Giglio* material, as well as transcripts of the tapes the government intends to use at trial.

### V.   MOTIONS OF CO-DEFENDANTS

Mr. Oluigbo joins in the arguments and requests for relief submitted on behalf of the moving co-defendants, to the extent those motions are relevant and applicable to Mr. Oluigbo, as if they were fully set forth herein.

## **CONCLUSION**

For the foregoing reasons, Mr. Oluigbo respectfully requests that this Court grant his motions *in limine* to exclude evidence of his prior conviction and other bad acts at trial, to preclude admission of evidence regarding alleged involvement by Mr. Oluigbo in narcotics trafficking in 2005, to exclude expert testimony by a government agent regarding the meaning of recorded conversations and the structure and operations of the charged conspiracy, to require immediate disclosure of 3500 and *Giglio* materials, as well as transcripts of tapes the government intends to offer at trial, and whatever other relief the Court deems proper.

Dated: New York, New York
       May 12, 2008

                                             Respectfully submitted,

                                             /s/ Andrew J. Ceresney
                                             Andrew J. Ceresney
                                             Eric D. Meyer
                                             Neuman Leverett III
                                             Gordon Eng
                                             Debevoise & Plimpton LLP
                                             919 Third Avenue
                                             New York, NY 10022
                                             (212) 909-6000

                                     *Counsel for Defendant Joseph Oluigbo*