```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA           :

     -against-                     :
                                           S2 07 Cr. 124 (WHP)
EMMANUEL ORUCHE, et al.,           :

          Defendants.              :

- - - - - - - - - - - - - - - - - -X
```

**MEMORANDUM OF LAW RESPONDING TO DEFENDANTS' MOTIONS IN LIMINE**

 

 

 

 

> **MICHAEL J. GARCIA**
> **United States Attorney for the**
> **Southern District of New York**
> **Attorney for the United States**
> **of America**

**MICHAEL M. ROSENSAFT**
**Assistant United States Attorney**

    **- Of Counsel -**

**TABLE OF CONTENTS**

I.   The Government Does Not Plan To Introduce Evidence Of
     Oluigbo's Or Oruche's Prior Drug Convictions In Its
     Case-In-Chief. . . . . . . . . . . . . . . . . . . . . . . 2

II.  Response To Motions By Oluigbo And Oruche Seeking
     To Exclude Evidence Of Their Participation In The Same
     Conspiracy Charged In The Indictment Shortly Before And
     After 2006.. . . . . . . . . . . . . . . . . . . . . . . . 3

     A.   The Introduction Of Evidence Prior To 2006 Is Direct
          Proof Of The Charged Conspiracy.. . . . . . . . . . . 4

     B.   Evidence Of Oruche's Efforts To Convince A Co-
          Defendant Not To Cooperate Is Properly Admissible.. . 6

III. Statements Of Co-Defendants And Co-Conspirators. . . . . . 8

     A.   The Government Will Offer A <u>Brutonized</u> Version Of
          Joseph Oluigbo's Post-Arrest Statement. . . . . . . . 8

     B.   The Government Is Not Seeking To Introduce The
          Post-Arrest Statements Of Ojeogwu or Wagabono.. . .  11

IV.  The Defendant's Remaining Disclosure Motions Should Be
     Denied.. . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.   Early Disclosure of 3500 Material Or Giglio Material
          Is Inappropriate. . . . . . . . . . . . . . . . . . 11

     B.   Defendants' Motion For Immediate Disclosure Of Final
          Wiretap Transcripts Should Be Denied. . . . . . . . 13

     C.   Defendants' Motion To Exclude Expert Testimony
          Should Be Denied. . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**Statutes and Regulations**                                                                 **Page**

18 U.S.C. § 3500. . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed. R. Crim. P. 12.3.. . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Crim. P. 16.. . . . . . . . . . . . . . . . . . . . . . . . 14

Fed. R. Evid. 609.. . . . . . . . . . . . . . . . . . . . . . . . . 2

**Cases**

Crawford v. Washington, 541 U.S. 36 (2004). . . . . . . . . . . . 9

In re United States, 834 F.2d 283 (2d Cir. 1987). . . . . . . . 12

Richardson v. Marsh, 481 U.S. 200 (1987). . . . . . . . . . . . 8,9

United States v. Bruton, 391 U.S. 123 (1968). . . . . . . . 8,10,11

United States v. Coppa, 267 F.3d 132 (2d Cir. 2001).. . . . . . 12

United States v. Johnson,
No. 03-3976, 2005 WL 826131 (7th Cir. Apr. 5, 2005). . . . . . . 5

United States v. Flaherty, 295 F.3d 182 (2d Cir. 2002). . . . . 4

United States v. Kyles, 40 F.3d 519 (2d Cir. 1994). . . . . . . 9

United States v. Paredes-Rodriguez,
160 F.3d 49 (1st Cir. 1988). . . . . . . . . . . . . . . . . . . 5

United States v. Patterson,
No. 02 Cr. 283, 2002 WL 31890950 (S.D.N.Y. Dec. 27, 2002).. . 13

United States v. Percevault, 490 F.2d 126 (2d Cir. 1974). . . 12

United States v. Roldan-Zapata, 916 F.2d 795 (2d Cir. 1990). 6, 7

United States v. Sanin, 252 F.3d 79 (2d Cir. 2001). . . . . . 8, 9

United States v. Smith, 198 F.3d 377 (2d Cir. 1999).. . . . . . 8

United States v. Tutino, 883 F.2d 1125 (2d Cir. 1989).. . . . 8, 9

United States v. Williams, 936 F.2d 698 (2d Cir. 1991). . . 8, 9

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA           :

     -against-                     :
                                         S2 07 Cr. 124 (WHP)
EMMANUEL ORUCHE, et al.,           :

               Defendants.         :

- - - - - - - - - - - - - - - - - -X
```

**MEMORANDUM OF LAW RESPONDING TO DEFENDANTS' MOTIONS**

The Government hereby responds to the in limine motions brought by defendants Emmanuel Oruche and Joseph Oluigbo.[1]  Both defendants move to exclude any evidence regarding the defendants' prior convictions, as well as any acts outside of the specific time frames of the conspiracies charged in the Indictment.  Defendants further move to exclude expert testimony, for early disclosure of certain materials, and finally to exclude statements of co-conspirators.  For the reasons discussed fully below, these motions are either moot or should be denied.

---

[1]   Defendant Rebecca Ambo Fomum-Tibah entered a guilty plea before Magistrate Judge Theodore H. Katz on May 15, 2008.  Defendant Paul Osuji entered a guilty plea before Magistrate Judge Katz on May 16, 2008.  Magistrate Judge Katz recommended that Your Honor accept both pleas.  The Government is obtaining the transcripts from those pleas and will forward them to Your Honor as soon as it receives them.

### I. The Government Does Not Plan To Introduce Evidence Of Oluigbo Or Oruche's Prior Drug Conviction In Its Case-In-Chief

The Government has decided not to seek to introduce evidence of Joseph Oluigbo's or Emmanuel Oruche's prior drug convictions in its case-in-chief, and thus both defendants' motions should be denied as moot. The Government may seek to introduce the convictions of defendants Oruche and Oluigbo should they testify, pursuant to Federal Rule of Evidence 609(a)(1). Additionally, the Government reserves its right to introduce such evidence as rebuttal evidence should either defendant's defenses necessitate such evidence. Specifically, Oruche has indicated that he intends to rely on a defense of public authority and has provided notice pursuant to Federal Rule of Criminal Procedure 12.3. This defense would ostensibly be based on his cooperation agreement in conjunction with his 1995 conviction. Should Oruche pursue this defense and should the Court allow it to go forward, the Government would likely seek to offer evidence of his 1995 conviction as part of the Government's rebuttal case.

## II. Response To Motions By Oluigbo And Oruche Seeking To Exclude Evidence Of Their Participation In The Same Conspiracy Charged In The Indictment Shortly Before And After 2006

By letter dated April 30, 2008, the Government gave notice to defendant Joseph Oluigbo of its intent to introduce evidence relating to:

> Joseph Oluigbo's participation with Emmanuel Oruche and others in a conspiracy to import and distribute heroin in the United States in 2005. Such evidence would include testimony that in 2005, Joseph Oluigbo aided Emmanuel Oruche in importing and distributing heroin by transporting drug couriers within the United States and otherwise arranging for their travel within and outside of the United States.

The Government indicated that it considered such evidence background and intrinsic to the charged conspiracy, and not 404(b) evidence.

Since that time, the Government has further narrowed the evidence that it intends to introduce at trial, and, as such, plans to introduce evidence in the form of witness testimony of the narcotics relationship between Joseph Oluigbo and Emmanuel Oruche during November and December of 2005. As noted in the Government's bill of particulars as to Joseph Oluigbo, the Government intends to focus on specific acts in which Oluigbo engaged in furtherance of the conspiracy in mid to late 2006, but this testimony from November 2005, and continuing through mid 2006, is important to fully describe the conspiracy, including how it developed.

Similarly, the Government indicated in its April 30,

2008 letter to defense counsel for Emmanuel Oruche that it may seek to introduce testimony relating to:

> The importation and distribution of heroin by Emmanuel Oruche into the United States through drug couriers and transporting and selling that heroin in Michigan and the New York area throughout 2004 and 2005; and

> The attempts by Emmanuel Oruche after his arrest in early 2007 to contact Rebecca Fomum-Tibah, a codefendant in his case, and convince her not to testify against him or offer information against him at trial.

In its letter, the Government informed defense counsel for Emmanuel Oruche that it considered such evidence intrinsic to the charged conspiracy and not 404(b) evidence. Again, since that letter, the Government has been able to further narrow the proof it intends to offer at trial. The Government no longer intends to introduce evidence relating to Oruche's drug trafficking in 2004.

### A. The Introduction Of Evidence Prior To 2006 Is Direct Proof Of The Charged Conspiracy

The evidence that the Government is seeking to admit is properly admissible as it directly relates to the same conspiracy as charged in the Indictment. The Indictment charges defendants with criminal conduct "in or about 2006." This charging language is wholly appropriate. As the Second Circuit has held, an indictment "need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximately terms." United States v. Flaherty, 295 F.3d 182, 198 (2d Cir.

2002).  Moreover, "reference to approximate dates in an indictment is not binding and thus the scope of the indictment may cover prior events."  United States v. Paredes-Rodriquez, 160 F.3d 49, 56 (1st Cir. 1988); see also United States v. Johnson, No. 03-3976, 2005 WL 826131 (7th Cir. Apr. 5, 2005) (admission of testimony to a possession of narcotics in October 2001 was within scope of Indictment that charged conduct through the summer of 2001).  Thus, events that occurred in late 2005 and involved the same conspiracy charge in the Indictment as occurring "in or about 2006" are within the time frame of the conspiracy.

      Alternatively, even if the time frames in the Indictment were narrowly construed, the evidence of criminal conduct in late 2005 is admissible as intrinsic evidence.  As to both defendants, the Government expects a cooperating witness to testify as to the development of his/her involvement in the conspiracy and the beginning relationships between Oluigbo, Oruche, and others in the conspiracy.  In addition, specifically with respect to defendant Oruche, a cooperating witness is expected to testify that he/she saw Oruche with heroin for distribution in late 2005.  Again, such evidence is part of the same conspiracy charged in the Indictment and falls within the time period "in or about 2006," but even if it were farther removed from the time period in the Indictment, it is not 404(b) evidence because it is intrinsic to the conspiracy and provides

5

necessary background.

**B.  Evidence Of Oruche's Efforts To Convince A Codefendant Not To Cooperate Is Properly Admissible**

In its April 30, 2008 letter, the Government also informed defendant Emmanuel Oruche that intended to seek to introduce evidence regarding:

> The attempts by Emmanuel Oruche after his arrest in early 2007 to contact Rebecca Fomum-Tibah, a codefendant in his case, and convince her not to testify against him or offer information against him at trial.

Such evidence is properly admissible of consciousness of guilt, and as statements made by Oruche in furtherance of the conspiracy.

Evidence that a defendant urged an accomplice not to cooperate with law enforcement is admissible to establish consciousness of guilt.  As noted by the Second Circuit in <u>United States</u> v. <u>Roldan-Zapata</u>, 916 F.2d 795, 803-04 (2d Cir. 1990): "Co-conspirator statements may include attempts to cover up an ongoing conspiracy after the participants have been arrested." In that case, the Second Circuit found that a defendant's statements to a co-conspirator to get a new lawyer was "probative of their joint endeavor and his leadership role," and statements that "the Government would have no case if Akiva did not talk" was "plainly relevant to show Roldan-Zapata's consciousness of guilt."  <u>Id.</u>  The same is true in the present case.

The evidence that the Government may seek to introduce

6

would include a letter written by Emmanuel Oruche, before his arrest, to Rebecca Ambo Fomum-Tibah, after her arrest, dated January 18, 2007, in which he stated, among other things:

> My Becky, remember those people can only charge you with what they caught you with; PERIOD. Any additional charges against you will come from what you told them. They will threaten and pressure you to tell them about other people. Also be extra careful about people around you and what you say to them because there are many undercover people working with the DA. Be careful about what you say to your cellmate because she might be undercover too. They will tell the govt what you told them in order to cut a deal. I say this again, 'BE EXTRA CAREFUL.' . . . Your new lawyer may think that if you have information, you could walk and so is everybody else. They're just trying to get you to sing if you know what I mean.

Exhibit A, Ltr. from Emmanuel Oruche to Rebecca Ambo Fomum-Tibah, Jan. 18, 2007. The Government's evidence at trial would include this letter as well as recorded conversations between Emmanuel Oruche and Rebecca Fomum-Tibah, again showing Oruche's attempts to convince Fomum-Tibah not to cooperate with the Government. Such evidence is admissible on multiple bases: <u>first</u>, it is "plainly admissible to show [Oruche's] consciousness of guilt," <u>see</u> <u>Roldan-Zapata</u>, 916 F.2d at 803-04; <u>second</u>, it is also a co-conspirator statement made in furtherance of the conspiracy (specifically, to cover up the conspiracy before Oruche was arrested and the conspiracy ended); and <u>third</u>, it shows the relationships between members of the conspiracy – specifically, the leadership role that Oruche held. In any case, it is properly admissible.

7

**III. Statements Of Co-Defendants And Co-Conspirators**

    **A.    The Government Will Offer A <u>Brutonized</u> Version Of Joseph Oluigbo's Post-Arrest Statement**

In <u>United States</u> v. <u>Bruton</u>, 391 U.S. 123 (1968), the United States Supreme Court held that, in a joint trial, the admission of a co-defendant's confession that implicates the defendant violates the defendant's rights under the Confrontation Clause of the Sixth Amendment. However, the broad right delineated in <u>Bruton</u> was subsequently circumscribed by <u>Richardson</u> v. <u>Marsh</u>, 481 U.S. 200, 208 (1987), which held that where a co-defendant's statement "was not incriminating [to the defendant] on its face, and became so only when linked with evidence introduced later at trial," it was proper to presume that a jury would follow the court's limiting instructions to consider a co-defendant's statements only against the co-defendant.

The Second Circuit has repeatedly approved of the admission of statements made by defendants that have been redacted to replace the names of any co-defendants with neutral pronouns, with no indication that the original statement contained actual names. See <u>United States</u> v. <u>Sanin</u>, 252 F.3d 79, 84-85 (2d Cir. 2001); <u>United States</u> v. <u>Smith</u>, 198 F.3d 377, 385 (2d Cir. 1999); <u>United States</u> v. <u>Williams</u>, 936 F.2d 698, 700 (2d Cir. 1991) (approving substitution of "guy"); <u>United States</u> v. <u>Tutino</u>, 883 F.2d 1125, 1135 (2d Cir. 1989). Such statements are

admissible as long as "the statement standing alone does not otherwise connect co-defendants to the crimes." See Sanin, 252 F.3d at 85; Williams, 936 F.2d at 700; Tutino, 883 F.2d at 1135 ("[A] redacted statement, in which the names of co-defendants are replaced with neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's Bruton rights.") (emphasis added); United States v. Kyles, 40 F.3d 519, 526 (2d Cir. 1994) (statement which replaced a defendant's name with the neutral pronoun "he," – so that it read "he got me into this, these bank robberies" – did not standing alone connect the defendant to the robberies.").

Moreover, these holdings were undisturbed by Crawford v. Washington, 541 U.S. 36 (2004). Crawford concerned the admission against a defendant of a testimonial statement made by the defendant's wife, where the defendant had no opportunity to cross-examine her. Thus, Crawford has no bearing on Richardson and its progeny, which concern the admissibility against the defendant (and not against a co-defendant) of post-arrest statements made by the defendant himself or herself. Under Second Circuit caselaw following Richardson, if a defendant's statements are admitted solely against the defendant, the Sixth Amendment rights of co-defendants are protected by the use of

9

neutral pronouns that omit reference to the co-defendants.

Joseph Oluigbo made post-arrest statements on or about February 28, 2007. The Government has included a copy of Oluigbo's post-arrest statements as Exhibit B. The Government intends to elicit the following redacted version of Oluigbo's post-arrest statement in order to comply with the strictures of <u>Bruton</u>:

(1) Oluigbo stated he works at Nicobi Healthcare Services.
(2) Oluigbo stated he has worked at Nicobi Healthcare Services since December of 2005 as a manager.
(3) Oluigbo stated he contacts **another individual** at 646-533-8587.
(3) Oluigbo stated **another individual** pays the rent at 1018 E. 223rd Street, Bronx, NY.
(4) Oluigbo stated he drives a Lexus owned by **another individual**.
(5) Oluigbo stated he knows Rebecca,[2] **[]** and has known her for one year or less.
(6) Oluigbo stated he met Rebecca when she came to the store in 2005 and that he and Rebecca became friends.
(7) Oluigbo stated **another individual** told him Rebecca was arrested for drugs.
(8) Oluigbo stated **another individual** advised him the airline ticket Rebecca was arrested on was bought by **that individual**.
(9) Oluigbo stated that the black briefcase found in his home **belonged to another individual**.
(10) Oluigbo stated that he did not know Jemy had drugs.
(11) Oluigbo stated he got rid of the identification of a New Jersey Male and does not know who the New Jersey male was.
(12) Oluigbo stated a scale was hidden in the armchair of his house.

---

[2] Because Rebecca Ambo Fomum-Tibah has pled guilty in this case and is not expected to be a co-defendant at trial, the inclusion of her name does not raise Sixth Amendment issues.

The Government submits that its version of Oluigbo's statement fully complies with Bruton because the statement standing alone does not implicate Oruche in any of the crimes charged in the Indictment. There is nothing in Oluigbo's statement that could be construed as facially incriminating to Oruche. Of course, should the Court admit the statement into evidence as redacted, the Government requests that the Court provide a proper limiting instruction at the time the statement is admitted into evidence.

### B. The Government Is Not Seeking To Introduce The Post-Arrest Statements Of Co-Conspirators Ojeogwu or Wagabono

Oruche also moves to exclude the post-arrest statements of Ojeogwu and Wagabono, two drug couriers who implicated Emmanuel Oruche. The Government is not seeking to introduce the post-arrest statements of Ojeogwu or Wagabono.

## IV. The Defendant's Remaining Disclosure Motions Should Be Denied

### A. Early Disclosure of 3500 Material Or Giglio Material Is Inappropriate

Defendants move to compel immediate disclosure of 3500 material and Giglio material. This motion should be denied. Under well-established caselaw, a district court's power to order pretrial disclosure of Section 3500 material is constrained by 18 U.S.C. § 3500, which provides for the disclosure of 3500 material only "after a witness called by the United States has testified .

. . ." 18 U.S.C. § 3500.  A District Court exceeds its authority when it circumvents the statute and provides for earlier disclosure without a compelling reason.  See United States v. Coppa, 267 F.3d 132, 146 (2d Cir. 2001) (holding the district court exceeded its authority in ordering the pretrial production of all impeachment evidence without regard for its materiality in the sense of Brady, Bagley, Giglio, and Augurs); see also In re United States, 834 F.2d 283, 286-87 (2d Cir. 1987) (granting mandamus to vacate order requiring production of witness statements); United States v. Percevault, 490 F.2d 126, 131 (2d Cir. 1974) (reversing order suppressing witness' testimony on the grounds that the Government did not produce witness statements in advance of trial despite being ordered to do so).  Likewise, the Government is not required to disclose impeachment material so soon before trial before it has even finalized all of its witnesses.  As the Second Circuit made clear in Coppa, the Government must disclose impeachment material "no later than the point at which a reasonable probability will exist that the outcome would have been different if an earlier decision had been made."  Coppa, 267 F.3d at 142.  This point has not been reached.

There is nothing about this case that necessitates the immediate disclosure sought by the defense.  The Government now expects that the trial will last approximately one week for its case-in-chief.  The evidence will consist primarily of wiretap

12

calls introduced through a translator and a law enforcement agent, other law enforcement agents, and a cooperating witness. There is nothing particularly complicated about the Government's case that would counsel for early disclosure of 3500 or Giglio material.

Consistent with the practice in this District, the Government is prepared to make 3500 material and impeachment material available to defense counsel by 3:00 p.m. on the Friday before the week in which the witness will testify. See United States v. Patterson, 02 Cr. 283 (WHP), 2002 WL 31890950 (S.D.N.Y. Dec. 27, 2002) (approving of a similar procedure). Given that this trial will begin on a Wednesday, this affords defense counsel even additional time than usual in this District, and will provide them adequate time to review such material before trial.

**B. Defendants Motion For Immediate Disclosure Of Final Wiretap Transcripts Should Be Denied**

Defendants also move for immediate disclosure of final wiretap transcripts. However, the Government has not finalized the wiretap transcripts that it intends to use at trial. It is currently doing so, and will produce such transcripts as they become available on a rolling basis. The Government does not believe this will cause any delay to the trial. First, the Government has already identified, four weeks before trial, the

13

calls that it is considering introducing at trial.[3]  All defendants were provided audio recordings, linesheets (i.e. summaries of calls), and, in some cases, draft transcripts of these calls.[4]  Thus, all defendants are already aware of the general content of the calls that the Government intends to introduce, and will be provided finalized transcripts as soon as they are ready.

    C.    **Defendants' Motion To Exclude Expert Testimony Should Be Denied**

Finally, defense counsel moved for exclusion of certain expert testimony or, in the alternative, requested expert notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G).  The only witnesses the Government intends to call are those that are typically relied on by the Government in narcotics cases, namely:

> 1) An expert who will be able to translate the intercepted calls from Igbo to English;
>
> 2) The chemists who performed analyses on the seized narcotics in this case and will be able to testify as to the weight and type of narcotics seized;
>
> 3) An expert from the Drug Enforcement Administration, who will be able to testify as to the price of narcotics in certain geographic areas during the relevant time periods in the Indictment, and in what quantities such heroin and cocaine was commonly sold.

---

[3]  The Government identified 64 calls in its June 5, 2008 letter, it also indicated in that letter that it intends to further narrow this list as the trial date grows closer.

[4]  The calls are in Igbo, English, or a mix of Igbo and English.

14

Defense counsel specifically argues against a law enforcement expert who will offer interpretations of intercepted calls.  As can be seen above, the Government does not intend to call such an expert to offer interpretations of intercepted calls, other than the general testimony that the Government may seek to elicit that may relate to the calls regarding the pricing and quantities of certain narcotics.

### CONCLUSION

For the reasons discussed above, defendants motions should either be denied as moot or denied in full.

Dated:    New York, New York
          May 19, 2008

                              Respectfully Submitted,

                              MICHAEL J. GARCIA
                              United States Attorney


                         By:    /s/ Michael M. Rosensaft
                              Michael M. Rosensaft
                              Assistant United States Attorney
                              (212) 637-2366