UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,                  :
                                           :  **FILED ELECTRONICALLY**
                        v.                 :
                                           :  07 Cr. 0124 (WHP)
EMMANUEL ORUCHE, et al.,                   :
                                           :
                        Defendants.        :
                                           :
------------------------------------------------------------ x


REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT JOSEPH
OLUIGBO'S MOTIONS *IN LIMINE*

Andrew J. Ceresney
Eric D. Meyer
Neuman Leverett III
Gordon Eng
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Counsel for Defendant*
JOSEPH OLUIGBO

Defendant Joseph Oluigbo submits this reply memorandum of law in further support of his motion *in limine* to exclude at trial all references to (i) his 1991 conviction, and (ii) any uncharged crimes or other alleged bad acts, including alleged conduct by Mr. Oluigbo in 2005 that the government has recently disclosed but that is not charged in the indictment.[1]  Mr. Oluigbo also moves, in response to the government's stated intentions in its memorandum of law dated May 19, 2008 (Govt. Brief), to preclude the government from introducing at trial the proposed revised version of Mr. Oluigbo's post-arrest statement pursuant to *United States v. Bruton* because introduction of the statement in the form proposed by the government will severely prejudice Mr. Oluigbo, or alternatively for severance of Mr. Oluigbo from Mr. Oruche for trial.  Mr. Oluigbo also continues to seek immediate disclosure of all 3500 and *Giglio* material from the government, as well as transcripts for all tape recordings that the government intends to introduce at trial.

## I.     THE COURT SHOULD EXCLUDE EVIDENCE OF MR. OLUIGBO'S 17-YEAR-OLD CONVICTION.

It is not surprising that in light of the clearly applicable precedent, the government has stated that it "has decided not to seek to introduce evidence" of Mr. Oluigbo's 17-year old conviction "in its case in chief." Govt. Brief at 2.  However, because the government has stated that it may seek to introduce evidence of Mr. Oluigbo's prior conviction pursuant to Fed. R.

---

[1]  In his motion *in limine*, Mr. Oluigbo also moved to exclude at trial any expert and lay opinion testimony offered by government witnesses purportedly to explain the meaning of conversations captured on wiretaps by the government and the typical structure and operation of heroin trafficking organizations.  In its response to that motion, the government indicated it does not intend to introduce such testimony, and instead indicated that the only expert witnesses it intends to introduce at trial are an expert to translate certain recorded conversations from Igbo into English, one or more chemists, and an expert from the Drug Enforcement Administration to testify about the price of narcotics.  To the extent that the government does not intend to offer expert or lay opinion testimony at trial along the lines described in defendant's motion, Mr. Oluigbo's motion on this ground is moot.

Evid. 609(a)(1) if he should testify or as rebuttal evidence if necessary, Mr. Oluigbo moves pursuant to Fed. R. Evid. 609(a)(1) and 609(b) to exclude evidence of the 17-year-old conviction even if he chooses to testify at trial. Mr. Oluigbo was released from confinement for that conviction in 1994, more than ten years ago. Pursuant to Rule 609(b), evidence of a prior conviction is not admissible for the purpose of impeaching a witness "if a period of more than ten years has elapsed since [the later of] the date of the conviction or of the release of the witness from the confinement imposed for that conviction … unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." As argued in his opening brief, Mr. Oluigbo's conviction has no probative value and its introduction into evidence at trial would be terribly prejudicial. (Oluigbo Memo. of Law dated May 12, 2008, at 4-8). Accordingly, evidence of Mr. Oluigbo's prior conviction should be excluded, whether or not Mr. Oluigbo testifies.

**II.    THE COURT SHOULD EXCLUDE EVIDENCE OF ACTS FALLING OUTSIDE THE CHARGED CONSPIRACY**.

The government has failed to demonstrate that the alleged unlawful conduct by Mr. Oluigbo in 2005 is inextricably intertwined with the charged conspiracy or is necessary background, and therefore the evidence should be excluded.

Despite having numerous opportunities to detail the alleged 2005 conduct regarding Mr. Oluigbo – including in the bill of particulars, the government's April 30, 2008 letter to Mr. Oluigbo's counsel, and the opposition to Mr. Oluigbo's motions *in limine* – the government has persisted in offering only the most general statements that the alleged 2005 conduct involves aiding Mr. Oruche by transporting drug couriers and arranging for their travel. The government has not described with any particularity a single instance in 2005 of Mr. Oluigbo engaging in any

conduct related to narcotics, or otherwise provided any basis for believing that this conduct, which predates the first alleged act in the government's bill of particulars by six months, is inextricably intertwined with the charged conspiracy. Instead, the description the government has provided – "evidence in the form of witness testimony of the narcotics relationship between Joseph Oluigbo and Emmanuel Oruche during November and December of 2005" – does not allow for a finding that the alleged evidence is intrinsic to or inextricably intertwined with the charged conduct. Until such a showing is made, the evidence should be excluded.

The government also asserts that the 2005 conduct is actually charged in the indictment, referencing the "in or about" language in the conspiracy count of the indictment as suggesting that the conspiracy could have extended to 2005. But this attempt to shoehorn this evidence into the indictment contradicts the government's initial disclosure of its intent to offer this evidence in its April 30, 2008 letter, in which it did not claim that the conduct was charged in the indictment, but instead sought to justify admissibility on the basis that the conduct is inextricably intertwined with the conduct charged in the indictment. And most importantly, the government failed to identify this 2005 conduct in its bill of particulars. The government therefore is estopped from now claiming that this evidence is part of the conspiracy charged in the indictment.

Accordingly, evidence of uncharged 2005 conduct should be excluded.

**III.   THE *BRUTONIZED* VERSION OF MR. OLUIGBO'S STATEMENT SHOULD BE PRECLUDED, OR ALTERNATIVELY MR. OLUIGBO AND MR. ORUCHE SHOULD BE SEVERED FOR TRIAL.**

In its opposition brief, the government stated that it intends to introduce a redacted version of Mr. Oluigbo's post-arrest statement, pursuant to *United States v. Bruton*, 391 U.S. 123 (1968), that will eliminate all references to Mr. Oluigbo's co-defendant Emmanuel Oruche in

3

order to avoid any risk that Mr. Oluigbo's statement would implicate Mr. Oruche. Although the altered version of Mr. Oluigbo's statement may mitigate the risk to *Mr. Oruche* from the introduction of the statement at trial, the introduction of the statement in the proposed altered form would present extreme prejudice to *Mr. Oluigbo*. The redacted statement would strip Mr. Oluigbo's post-arrest statement of all of its context, and would make Mr. Oluigbo appear to the jury to have been evasive, when in fact he provided complete answers to the agents' questions. Therefore, because the form of statement the government has proposed would prejudice Mr. Oluigbo, the post-arrest statement should be excluded, or in the alternative, Mr. Oluigbo should be severed from Mr. Oruche for trial.

By referencing "another individual" instead of Mr. Oruche in situations in which it will be clear to the jury that Mr. Oruche is that other individual, the *Brutonized* statement will leave the jury with the incorrect and harmful impression that Mr. Oluigbo was not candid with agents in his post-arrest statement – which in fact he was – and that he was attempting to protect Mr. Oruche, and it will suggest that Mr. Oluigbo had contact with other alleged co-conspirators with whom he had no dealings. For example:

- Under the *Brutonized* version (Govt. Brief at 10), the jury would be told that Mr. Oluigbo "stated another individual pays the rent" at his residence, when in fact Mr. Oluigbo truthfully stated that Mr. Oruche paid the rent. The jury will be left with the impression that Mr. Oluigbo was being evasive and was attempting to protect Mr. Oruche.

- Similarly, under the *Brutonized* statement, the jury would be told that Mr. Oluigbo "stated he drives a Lexus owned by another individual," when in fact Mr. Oluigbo truthfully stated that Mr. Oruche owned the Lexus.

- Under the *Brutonized* statement, the jury would be told that Mr. Oluigbo "stated he knows Rebecca [Fomum-Tibah], and has known her for one year or less. Oluigbo stated he met Rebecca when she came to the store in 2005 and that he and Rebecca became friends." Missing from this redacted statement is the critical fact that Mr. Oluigbo had told the agents that Ms. Fomum-Tibah was "Oruche's girlfriend," and therefore that he knew her through Mr. Oruche, his employer at the store.

4

- Under the *Brutonized* statement, the jury would be told that Mr. Oluigbo "stated another individual told him Rebecca was arrested for drugs," when in fact Mr. Oluigbo truthfully stated it was Mr. Oruche who told him this information. Again, the jury may very well believe that Mr. Oluigbo was trying to protect Mr. Oruche by refusing to give his name, when in fact he was candid with the agents. In addition, it may lead the jury to believe that Mr. Oluigbo had contact with other members of the alleged conspiracy about Ms. Fomum-Tibah's arrest from whom he learned the information, when in fact he did not.

- Under the *Brutonized* statement, the jury would be told that Mr. Oluigbo "stated another individual advised him that the airline ticket Rebecca was arrested on was bought by that individual." Again, the jury would be left with the false impression that Mr. Oluigbo refused to indicate who had purchased the airline ticket for Ms. Fomum-Tibah, when in fact the complete post-arrest statement indicates that Mr. Oluigbo told the interviewing agents that Mr. Oruche had told Mr. Oluigbo that he (Mr. Oruche) had purchased Ms. Fomum-Tibah's ticket. It would also suggest that Mr. Oluigbo had contact with others in the conspiracy regarding Ms. Fomum-Tibah from whom he learned this information, which he did not.

- Under the *Brutonized* statement, the jury would be told that Mr. Oluigbo "stated that the black briefcase found in his home belonged to another individual," when in fact Mr. Oluigbo truthfully indicated it belonged to Mr. Oruche, whose apartment he was renting. Again, the jury may wrongly believe Mr. Oluigbo was being evasive and attempting to protect Mr. Oruche, when in fact he was not, and they may draw a negative inference from the implication that Mr. Oluigbo refused to disclose the name of the person whose briefcase was in the apartment.

As is clearly demonstrated from these numerous examples, the *Brutonized* version of the statement creates a substantial risk of leaving the jury with several misimpressions about Mr. Oluigbo regarding his level of candor upon arrest and other issues vital to his defense, including his relationship to some of his alleged co-conspirators and Mr. Oruche. Mr. Oluigbo should not be forced to suffer this prejudice in order to alleviate any potential prejudice to Mr. Oruche.

Accordingly, the *Brutonized* post-arrest statement must be precluded at trial, as Mr. Oruche's rights cannot be preserved without prejudicing Mr. Oluigbo's rights. In the alternative, the prejudice to Mr. Oluigbo from the introduction of the *Brutonized* version is so great as to necessitate a severance of these defendants for trial.

5

**IV.  THE GOVERNMENT SHOULD IMMEDIATELY PRODUCE 3500 AND *GIGLIO* MATERIAL, AS WELL AS TRANSCRIPTS OF TAPES IT INTENDS TO INTRODUCE AT TRIAL**

Less than two weeks before trial, the government has still not produced transcripts of many of the wiretaps it intends to introduce at trial.  In accordance with the Court's March 5, 2008 Order, the government provided notice on May 9, 2008 of 65 calls that it may introduce at trial.  To date, the government has provided transcripts of only 35 of those calls, and has not indicated that these 35 transcripts represent the full scope of calls it may introduce at trial.  Instead, in its opposition to the motions *in limine*, the government stated that it "has not finalized the wiretap transcripts that it intends to use at trial" and that it "will produce such transcripts as they become available."  Govt. Brief at 13.  The government states that it "does not believe this will cause any delay to the trial."  *Id.*  But as the government and the Court are aware, many of the recorded conversations are entirely or partly in the Igbo language.  As evidenced by the apparent difficulties the government is having in finalizing the translations of these conversations, and given the relative lack of availability of Igbo translators, it may take substantial time to confirm the accuracy of the government's proposed transcripts and to review these proposed transcripts with Mr. Oluigbo.  Immediate production of these proposed translations is essential to avoid trial delay.

Similarly, the delay in producing 3500 and *Giglio* material until the Friday before the start of week in which the witness will testify carries a substantial risk of trial delay because of the potential need for further investigation based on those materials.  Immediate production of these materials is necessary to avoid delay.

6

**CONCLUSION**

     For the foregoing reasons, Mr. Oluigbo respectfully requests that this Court grant his motions *in limine* to exclude evidence of his prior conviction and other bad acts at trial, to preclude admission of evidence regarding alleged involvement by Mr. Oluigbo in narcotics trafficking in 2005, to exclude the *Brutonized* version of Mr. Oluigbo's post-arrest statement or alternatively to grant a severance of Mr. Oluigbo from Mr. Oruche for trial, to require immediate disclosure of 3500 and *Giglio* materials, as well as transcripts of tapes the government intends to offer at trial, and whatever other relief the Court deems proper.

Dated: New York, New York
       May 28, 2008

                                      Respectfully submitted,

                                      /s/ Andrew J. Ceresney
                                      Andrew J. Ceresney
                                      Eric D. Meyer
                                      Neuman Leverett III
                                      Gordon Eng
                                      Debevoise & Plimpton LLP
                                      919 Third Avenue
                                      New York, NY 10022
                                      (212) 909-6000

                                  *Counsel for Defendant Joseph Oluigbo*